FILED
OCT 31 2007
OCT. 31, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JH

| | |
|---|---|
| JEFFERSON AT YOUNG CIRCLE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., MCZ DEVELOPMENT CORP., AND CENTRUM PROPERTIES, INC., <br><br> Defendants. | 07CV 6161 <br> JUDGE HART <br> MAGISTRATE JUDGE SCHENKIER |

## JEFFERSON AT YOUNG CIRCLE, L.P.'S COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Now comes Plaintiff Jefferson at Young Circle, L.P. ("Jefferson" or "Plaintiff") and for causes of action against Defendants MCZ/Centrum Florida IV Owner, L.L.C., MCZ Development Corp., and Centrum Properties, Inc. (collectively "Defendants"), alleges as follows:

### I. SUMMARY OF CASE

1. Despite Defendant's contractual commitment in a particular Earnout Agreement that "Jefferson will share in the Net Profits," not a single dollar of Net Profits has been remitted to Plaintiff. Now, on the heels of a string of broken promises that the "check is in the mail," Plaintiff has no alternative, but to file this lawsuit seeking recovery from Defendants of its actual damages, avoidance of the fraudulent transfers, and its reasonable legal and paraprofessional fees, and court cost, as allowed by the contract.

149441_1/(88476/195)

## II.
## PARTIES

2. Plaintiff Jefferson at Young Circle, L.P. is a Delaware limited partnership with its principal place of business located at 600 E. Las Colinas Blvd., Suite 1800, Irving, Texas 75039.

3. Defendant MCZ/Centrum Florida IV Owner, L.L.C. ("MCZ/Centrum") is an Illinois limited liability company with its principal place of business located at 1555 N. Sheffield Avenue, Chicago, Illinois 60622. Defendant MCZ/Centrum may be served through its registered agent, Mary B. Koberstein, 225 W. Hubbard St., 4th Floor, Chicago, Illinois 60610.

4. On information and belief, Defendant MCZ Development Corp. ("MCZ") is a constituent member of Defendant MCZ/Centrum and is an Illinois corporation with its principal place of business located at 1555 N. Sheffield Ave., Chicago, Illinois 60622. Defendant may be served through its registered agent, Susan Ghelerter, 1555 N. Sheffield Ave., Chicago, Illinois 60622

5. On information and belief, Defendant Centrum Properties, Inc. ("Centrum") is a constituent member of Defendant MCZ/Centrum and is an Illinois corporation with its principal place of business located at 225 W. Hubbard St., 4th Floor, Chicago, Illinois 60610. Defendant Centrum may be served through its registered agent, Mary B. Koberstein, 225 W. Hubbard St., 4th Floor, Chicago, Illinois 60610.

## III.
## VENUE AND JURISDICTION

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this judicial district, and in particular Defendants' principal places of business are in this judicial district. In addition, in Paragraph 7 of the Earnout Agreement, the parties submitted to the jurisdiction of this Court.

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

## IV.
## FACTUAL BACKGROUND

### THE EARNOUT AGREEMENT BETWEEN THE PARTIES

8. Plaintiff and Defendant MCZ/Centrum entered into a particular Agreement of Sale and Purchase, dated November 2, 2004, by which Jefferson was the Seller and MCZ/Centrum was the Purchaser of a certain apartment complex located in the City of Hollywood, Florida, which improved real property was known at that time as Jefferson At Young Circle ("Property"). Defendants have subsequently renamed the Property as "Regent Park."

9. On or about December 9, 2004, and as part of the valuable consideration for the closing of the purchase of the Property, Plaintiff and Defendant MCZ/Centrum entered into a particular Earnout Agreement, which is the subject of this lawsuit ("Earnout Agreement"). (A true and correct copy of the Earnout Agreement is attached hereto as **Exhibit A**.) The Earnout Agreement provides in pertinent part:

> At such time as Net Profits distributed to MCZ's members pursuant to the terms of the MCZ Operating Agreement ("Operating Agreement") equal $5,000,000, then MCZ shall pay to Jefferson from time to time twelve and one-half percent (12.5%) of all Net Profits arising thereafter. Each such payment to Jefferson shall be made in cash concurrently with each distribution to MCZ's members . . . . Notwithstanding anything herein to the contrary, 12.5% of all Net Profits in excess of $5,000,000 and not previously distributed to Jefferson shall be paid to Jefferson within forty-five (45) days following the closing date of the sale of the last condominium unit or other interest in the Property.

(Earnout Agreement, pp. 1-2, ¶2.)

10. As a matter of financial accountability to Jefferson under this payment obligation, MCZ/Centrum was required to provide particular financial information periodically to Jefferson. The Earnout Agreement provided in pertinent part:

> MCZ shall provide quarterly sales reports of the condominium units in the Property sold in the form customarily prepared by MCZ for its members or as otherwise reasonably requested by Jefferson. Additionally, MCZ shall provide financial statements, operating statements, tax returns and any other financial information reasonably requested by Jefferson and relating to the Net Profits to which Jefferson may be entitled and MCZ shall provide same within ten (10) Business Days following Jefferson's request therefor.

(Earnout Agreement p. 2, ¶4.)

## DEMAND UPON DEFENDANT

11. On December 19, 2006, Jefferson made written demand upon MCZ/Centrum to promptly pay to Jefferson by check, all Net Profits due and owing to Jefferson and immediately provide the appropriate quarterly sales reports in accordance with the terms of the Earnout Agreement. In addition, pursuant to Paragraph 4 of the Earnout Agreement, Jefferson also made demand that MCZ/Centrum provide within ten (10) business days the following: all financial statements; all operating statements; all tax returns; and a complete and final sales report relating to MCZ/Centrum's disposition of the condominium units located on the Property.

12. Despite these requirements, as imposed by the Earnout Agreement, and despite such demand, MCZ/Centrum has failed to make any payment of Net Profits to Jefferson.

13. After an ultimate demand dated July 5, 2007, MCZ/Centrum provided some financial statements and tax returns for the years 2004, 2005, and 2006 to Plaintiff. However, the provided documents were incomplete and did not include any sales reports related to the sale of the condominium units. The incomplete documents did, however, reveal that long ago, the Property passed the point at which the amount of $5,000,000 of Net Profits had been distributed to constituent members MCZ and Centrum, and thus, the payment obligation to Jefferson had

become ripe. Indeed, MCZ/Centrum has admitted that it distributed Net Profits to MCZ and Centrum in violation of the Earnout Agreement.

## V.
## CAUSES OF ACTION

**Count 1 – Breach of Contract**

14. The factual allegations above are incorporated herein by reference.

15. Plaintiff and Defendant MCZ/Centrum entered into the Earnout Agreement dated December 9, 2004.

16. The Earnout Agreement was, and is, a valid and binding contract between Plaintiff and Defendant MCZ/Centrum.

17. Defendant MCZ/Centrum has materially breached the terms of the Earnout Agreement by, among other things: (a) failing to remit payment to Plaintiff equal to twelve and on-half percent (12.5%) of all Net Profits in excess of $5,000,000 concurrently with such distribution to Defendant MCZ/Centrum's members but no later then forty-five (45) days following the closing date of the sale of the last condominium unit or other interest in the Property; and (b) failing to provide the required complete financial documents, including the required sales reports addressed to the sale of condominium units within the Property.

18. As a direct and proximate result of Defendant MCZ/Centrum's material breach of its contractual obligations, Plaintiff has suffered significant and substantial damages in an amount that exceeds the jurisdictional limits of this Court.

19. As a result of Defendant MCZ/Centrum's breach, Plaintiff will be entitled to recover against Defendant MCZ/Centrum reasonable legal and paraprofessional fees and court cost at all trial and appellate levels, pursuant to Paragraph 9 of the Earnout Agreement.

**Count 2 – Violation of the Uniform Fraudulent Transfer Act**

20. The factual allegations above are incorporated herein by reference.

21. Defendant MCZ/Centrum made distributions of Net Profits to MCZ and Centrum with actual intent to hinder, delay, or defraud Plaintiff. Defendant MCZ/Centrum intended or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due or was engaged or was about to engage in a transaction for which its remaining assets were unreasonably small in relation to the transaction. Defendant MCZ/Centrum's actions constitute transfers fraudulent as to Plaintiff in violation of the Uniform Fraudulent Transfer Act, 740 ILCS 160/5.

22. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered significant and substantial damages in an amount that exceeds the jurisdictional limits of this Court.

23. Defendants MCZ and Centrum, as constituent members of Defendant MCZ/Centrum, were the recipients of the fraudulent transfers and are insiders under the Uniform Fraudulent Transfer Act.

24. In addition to any damages recoverable against Defendant MCZ/Centrum, Plaintiff is also entitled to an avoidance of the transfer to the extent necessary to satisfy its claim, pursuant to Uniform Fraudulent Transfer Act, 740 ILCS 160/8(1).

## V.
## DEMAND FOR JURY TRIAL

25. Plaintiff hereby demands a trial by jury.

149441_1/(88476/195)

## VI.
## PRAYER

**WHEREFORE**, Plaintiff requests that upon summary judgment or trial, the Court enter a judgment allowing Plaintiff to recover from Defendants MCZ/Centrum, MCZ, and Centrum as follows:

1. Actual damages as will be proven;

2. An avoidance of the transfer to the extent necessary to satisfy its claim;

3. Preliminary and permanent injunctions prohibiting Defendants from distributing or otherwise transferring Net Profits from the Property;

4. Reasonable legal and paraprofessional fees and court costs at all trial and appellate levels, as allowed by the Earnout Agreement;

5. Pre-judgment and post-judgment interest as permitted by law; and

6. All the relief to which Plaintiff is justly entitled.

Dated: October 31, 2007.

Respectfully submitted,

*[signature]*

Martin J. Bishop, IL Bar No. 6269425
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
Telephone: 312.832.4500
Facsimile: 312.832.4700

Craig A. Albert, TX Bar No. 00790076
Sarah J. Shadonix, TX Bar No. 24056392
McElree|Savage|Smith
600 N. Pearl Street, Suite 1600
Plaza of the Americas
Dallas, Texas 75201
Telephone: 214.953.1321
Facsimile: 214.953.0695
(*pending approval of Pro Hac Vice application*)

**ATTORNEYS FOR PLAINTIFF,
JEFFERSON AT YOUNG CIRCLE, L.P.**

# Exhibit A

## EARNOUT AGREEMENT

THIS AGREEMENT (the "Agreement"), dated as of December 9, 2004, is executed by and between JEFFERSON AT YOUNG CIRCLE, L.P., a Delaware limited partnership ("Jefferson") and MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., an Illinois limited liability company ("MCZ").

RECITALS:

A. As of the date hereof, MCZ has purchased from Jefferson its interest in that certain apartment complex located in the City of Hollywood, Florida currently known as Jefferson at Young Circle (the "Property"), pursuant to an Agreement of Sale and Purchase (the "Contract") dated November 2, 2004, by and between Jefferson, as seller, and MCZ, as purchaser.

B. As of the date hereof, it is the intention of MCZ to convert the Property into condominium units and to sell such units.

C. As part of the consideration for the purchase of the Property, Jefferson will share in the Net Profits (as hereinafter defined) of MCZ derived from the sale of condominium units at the Property or other interests therein.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Recitals**. The foregoing recitals are true and correct and are hereby incorporated by reference. Capitalized terms used but not defined in this Agreement shall have their defined meanings in the Contract.

2. **Participation**. At such time as Net Profits distributed to MCZ's members pursuant to the terms of the MCZ Operating Agreement ("Operating Agreement") equal $5,000,000, then MCZ shall pay to Jefferson from time to time twelve and one-half percent (12.5%) of all Net Profits arising thereafter. Each such payment to Jefferson shall be made in cash concurrently with each distribution to MCZ's members. Jefferson and MCZ acknowledge and agree that (a) the managers of MCZ shall direct all distributions of Net Profits under this Agreement at such time or times as is determined by the managers in their sole and absolute discretion in accordance with the terms of this Agreement and the Operating Agreement, (b) nothing contained in this Agreement shall in any manner be construed to imply that Jefferson has any claim or right whatsoever under this Agreement to require that distributions of Net Profits be made at any particular time or in any particular amount other than as provided in this Agreement, (c) in determining whether to make a distribution or payment of such Net Profits at any time, or in determining the amount of any Net Profits, the managers shall not have any fiduciary, or trustee or other obligation or duty to Jefferson or any its managers, members or Affiliates other than a contractual obligation or duty pursuant to the terms hereof, and (d) MCZ shall have the right to offset against amounts due Jefferson the amount of any monetary losses, for costs and expenses incurred or suffered by MCZ as a consequence of any default with respect to any

surviving obligations of Jefferson under the Contract that continues after written notice and any applicable cure period. Notwithstanding anything herein to the contrary, 12.5% of all Net Profits in excess of $5,000,000 and not previously distributed to Jefferson shall be paid to Jefferson within forty-five (45) days following the closing date of the sale of the last condominium unit or other interest in the Property.

3. **Definition of Net Profits.** "Net Profits" shall mean with respect to a particular period, all cash paid to or in possession of the MCZ from any source, including, without limitation, cash from the sale of assets (including condominium units in the Real Property), after deducting therefrom (without duplication) all funds necessary to (i) pay any debt service of outstanding debts, or other costs, expenses and obligations of the MCZ relating to the acquisition, ownership, operation or development of the Property (or that are secured by the Property but not for obligations unrelated to the acquisition, ownership, development or operation of the Property) that are currently due or that are then being refinanced, including then payable fees, costs or expenses and reasonable sales commissions due to a member or Affiliate of MCZ (but excluding all salaries payable to members in the aggregate exceeding $100,000 per year); (ii) establish or add to any reserve in an amount that the managers of MCZ deem reasonably necessary to provide for contingent liabilities or obligations of the MCZ, and maturing obligations, in each case to the extent relating to the ownership, operation or development of the Property which the managers of MCZ determine such reserves to be advisable (but only to the extent such reserves are customary, and in amounts that are customary, for properties of a substantially similar type as the Property); and (iii) return to the members of MCZ an amount equal to their capital invested with MCZ relating to the acquisition, ownership, operation or development of the Property.

4. **Delivery of Statements.** MCZ shall provide quarterly sales reports of the condominium units in the Property sold in the form customarily prepared by MCZ for its members or as otherwise reasonably required by Jefferson. Additionally MCZ shall provide financial statements, operating statements, tax returns and any other financial information reasonably requested by Jefferson and relating to the Net Profits to which Jefferson may be entitled and MCZ shall provide same within ten (10) Business Days following Jefferson's request therefor. Jefferson shall have the right to have such reports, records and materials independently audited to determine the Net Profits having arisen at any time. If such audit reveals that Jefferson has not been paid all Net Profits to which it is entitled, then the cost of such audit and related collection and investigation costs shall be paid by MCZ, together with any unpaid Net Profits to which Jefferson is entitled.

5. **Miscellaneous.** Jefferson acknowledges and agrees that (a) the right to payment of the Net Profits hereunder does not constitute an ownership interest in all or any portion of the Property or of MCZ, (b) Jefferson shall have no right to participate in the management of the Property, (c) MCZ shall have no fiduciary duty to Jefferson with respect to the operation and/or disposition of the Property, and (d) this Agreement shall not create a partnership or joint venture between Jefferson and MCZ.

6. **Entire Agreement.** This Agreement contains the entire agreement between the parties hereto with respect to the subject matter of this Agreement and supersedes all prior

discussions and agreements between the parties with respect thereto. This Agreement shall not be modified or amended except by an instrument in writing signed by all parties hereto.

7. Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS, WITHOUT REFERENCE TO ITS CHOICE OF LAW PRINCIPLES, AND SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE SUCCESSORS INCLUDING WITHOUT LIMITATION ANY LIQUIDATOR, RECEIVER, TRUSTEE, OR DEBTOR-IN-POSSESSION), ASSIGNS AND LEGAL REPRESENTATIONS OF THE PARTIES HERETO. MCZ AND JEFFERSON IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN COOK COUNTY, STATE OF ILLINOIS, OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

8. Severability. In the event one or more of the provisions of this Agreement or any document or agreement delivered or issued with respect to this Agreement shall be deemed to be invalid, illegal or unenforceable in any respect, then the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. All rights and remedies otherwise provided by applicable law. The headings of the various paragraphs hereof are inserted for convenience and reference only and shall not affect the interpretation of this Agreement.

9. Litigation. In the event of any litigation between the parties under this Agreement, the prevailing party shall be entitled to reasonable legal and paraprofessional fees and court costs at all trial and appellate levels.

10. Counterparts. This Agreement may be executed in any number of counterparts and by the separate parties hereto in separate counterparts, each of which when taken together shall be deemed to be one and the same instrument.

11. Waiver of Jury Trial. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF MCZ AND JEFFERSON IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE PROVISIONS OF THIS AGREEMENT.

*[Signatures on following page]*

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

MCZ/CENTRUM FLORIDA IV OWNER, L.L.C.,
an Illinois limited liability company

By: /s/ [signature]
Name: LAWRENCE ASHKIN
Title: A MANAGER


JEFFERSON AT YOUNG CIRCLE, L.P.,
a Delaware limited partnership

By:   Apartment Community Realty LLC,
      a Delaware limited liability company,
      its general partner


      By: _____
      Name: _____
      Title: _____

EARNOUT AGREEMENT -- Page 4
Jefferson at Young Circle

115149_1/(88476/195)

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

        MCZ/CENTRUM FLORIDA IV OWNER, L.L.C.,
        an Illinois limited liability company

        By: _____
        Name: _____
        Title: _____


        JEFFERSON AT YOUNG CIRCLE, L.P.,
        a Delaware limited partnership

By:   Apartment Community Realty LLC,
      a Delaware limited liability company,
      its general partner

        By: _____
        Name: James W. Morgan, Jr.
        Title: Assistant Vice President