UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
OCT 3 1 2007
OCT 31, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| JEFFERSON AT YOUNG CIRCLE, L.P., )<br><br>Plaintiff, )<br>v. )<br><br>MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., MCZ DEVELOPMENT CORP., AND CENTRUM PROPERTIES, INC., )<br><br>Defendants. ) | CIVIL ACTION NO. 07 C 6161<br><br>Judge William T. Hart |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Jefferson at Young Circle, L.P. ("Jefferson" or "Plaintiff"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 65, hereby moves the Court for preliminary injunctive relief against Defendants MCZ/Centrum Florida IV Owner, L.L.C., MCZ Development Corp., and Centrum Properties, Inc. (collectively "Defendants"). In support of this Motion, Jefferson states as follows:

**I.
SUMMARY OF CASE**

Despite Defendant's contractual commitment in a particular Earnout Agreement that "Jefferson will share in the Net Profits," not a single dollar of Net Profits has been remitted to Plaintiff. Now, on the heels of a string of broken promises that the "check is in the mail," Plaintiff has no alternative, but to seek a preliminary and permanent injunction against all these Defendants restraining them from distributing or otherwise transferring Net Profits.

1

## II.
## FACTUAL BACKGROUND

### THE EARNOUT AGREEMENT BETWEEN THE PARTIES

1.  Plaintiff and Defendant MCZ/Centrum entered into a particular Agreement of Sale and Purchase, dated November 2, 2004, by which Jefferson was the Seller and MCZ/Centrum was the Purchaser of a certain apartment complex located in the City of Hollywood, Florida, which improved real property was known at that time as Jefferson At Young Circle ("Property"). Defendants have subsequently renamed the Property as "Regent Park."

2.  On or about December 9, 2004, and as part of the valuable consideration for the closing of the purchase of the Property, Plaintiff and Defendant MCZ/Centrum entered into a particular Earnout Agreement, which is the subject of this lawsuit ("Earnout Agreement"). (A true and correct copy of the Earnout Agreement is attached hereto as **Exhibit A**.) The Earnout Agreement provides in pertinent part:

> At such time as Net Profits distributed to MCZ's members pursuant to the terms of the MCZ Operating Agreement ("Operating Agreement") equal $5,000,000, then MCZ shall pay to Jefferson from time to time twelve and one-half percent (12.5%) of all Net Profits arising thereafter. Each such payment to Jefferson shall be made in cash concurrently with each distribution to MCZ's members . . . . Notwithstanding anything herein to the contrary, 12.5% of all Net Profits in excess of $5,000,000 and not previously distributed to Jefferson shall be paid to Jefferson within forty-five (45) days following the closing date of the sale of the last condominium unit or other interest in the Property.

(Earnout Agreement, pp. 1-2, ¶2.)

3.  As a matter of financial accountability to Jefferson under this payment obligation, MCZ/Centrum was required to provide particular financial information periodically to Jefferson. The Earnout Agreement provided in pertinent part:

> MCZ shall provide quarterly sales reports of the condominium units in the Property sold in the form customarily prepared by MCZ for its members or as

       otherwise reasonably requested by Jefferson. Additionally, MCZ shall provide financial statements, operating statements, tax returns and any other financial information reasonably requested by Jefferson and relating to the Net Profits to which Jefferson may be entitled and MCZ shall provide same within ten (10) Business Days following Jefferson's request therefor.

(Earnout Agreement p. 2, ¶4.)

### DEMAND UPON DEFENDANT

4.    On December 19, 2006, Jefferson made written demand upon MCZ/Centrum to promptly pay to Jefferson by check, all Net Profits due and owing to Jefferson and immediately provide the appropriate quarterly sales reports in accordance with the terms of the Earnout Agreement. In addition, pursuant to Paragraph 4 of the Earnout Agreement, Jefferson also made demand that MCZ/Centrum provide within ten (10) business days the following: all financial statements; all operating statements; all tax returns; and a complete and final sales report relating to MCZ/Centrum's disposition of the condominium units located on the Property.

5.    Despite these requirements, as imposed by the Earnout Agreement, and despite such demand, MCZ/Centrum has failed to make any payment of Net Profits to Jefferson.

6.    After an ultimate demand dated July 5, 2007, MCZ/Centrum provided some financial statements and tax returns for the years 2004, 2005, and 2006 to Plaintiff. However, the provided documents were incomplete and did not include any sales reports related to the sale of the condominium units. The incomplete documents did, however, reveal that long ago, the Property passed the point at which the amount of $5,000,000 of Net Profits had been distributed to constituent members MCZ and Centrum, and thus, the payment obligation to Jefferson had become ripe. Indeed, MCZ/Centrum has admitted that it distributed Net Profits to MCZ and Centrum in violation of the Earnout Agreement.

## III.
## REQUEST FOR PRELIMINARY INJUNCTION

7. The factual allegations above are incorporated herein by reference.

8. To obtain injunctive relief, a plaintiff must demonstrate that "(1) it has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if it is denied; (4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest." *Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

9. In this case, there is a substantial likelihood that Plaintiff will prevail on the merits. Pursuant to the Earnout Agreement, Net Profits are due and owing to Plaintiff, and Defendant MCZ/Centrum has even admitted that these monies are owed.

10. Plaintiff's remedies at law are inadequate to compensate it for this harm and damage. Indeed, Defendant MCZ/Centrum has repeatedly refused to remit payment of Net Profits to Plaintiff, as contractually required by the Earnout Agreement, but has wrongfully distributed such Net Profits to MCZ and Centrum. Plaintiff has no ability to prevent Defendants MCZ/Centrum, MCZ, and Centrum from distributing or otherwise transferring all of the Net Profits. Once the Net Profits are distributed, it may be impossible to recover such profits. Consequently, Plaintiff has and will continue to suffer immediate and irreparable harm if Defendants MCZ/Centrum, MCZ, and Centrum are not enjoined during the pendency of this lawsuit from distributing or otherwise transferring Net Profits from the Property.

11. Any harm occasioned by the entry a preliminary injunction is outweighed by the potential damage to Plaintiff. Issuance of a preliminary injunction would not adversely affect the public interest and public policy.

150174_1/(88476/195)

12. Plaintiff is willing to post a bond in the amount the Court deems appropriate.

13. Plaintiff requests the Court set its motion for preliminary injunction for hearing at the earliest possible time, and after hearing the motion, issue a preliminary injunction against Defendants MCZ/Centrum, MCZ, and Centrum restraining them from distributing or otherwise transferring Net Profits, specifically that the constituent members of MCZ/Centrum maintain (pro rata to their membership interest) in segregated interest-bearing accounts respectively sufficient funds to satisfy the undisputed amount of the Earnout Payment plus interest.

## IV.
## REQUEST FOR PERMANENT INJUNCTION

14. The factual allegations above are incorporated herein by reference.

15. Plaintiff further asks the Court to set its motion for injunctive relief for a full trial on the issues in this motion, and after the trial, to issue a permanent injunction against Defendants MCZ/Centrum, MCZ, and Centrum from distributing or otherwise transferring Net Profits from the Property.

## VI.
## PRAYER

**WHEREFORE**, Plaintiff requests that the Court set its Motion for Preliminary Injunction for hearing at the earliest possible time, and, in conjunction with Plaintiff's Motion for Expedited Discovery, establish a briefing scheduling in anticipation of such hearing. Plaintiff further requests that the Court, after hearing the motion, issue a preliminary injunction against Defendants MCZ/Centrum, MCZ, and Centrum from distributing or otherwise transferring Net Profits, specifically that the constituent members of MCZ/Centrum maintain (pro rata to their membership interest) and allow Plaintiff any other relief to which it may be justly entitled. A proposed Preliminary Injunction Order is attached as **Exhibit B**.

Dated: October 31, 2007.

                Respectfully submitted,

                */s/ Martin J. Bishop*

Martin J. Bishop, IL Bar No. 6269425
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
Telephone: 312.832.4500
Facsimile: 312.832.4700

Craig A. Albert, TX Bar No. 00790076
Sarah J. Shadonix, TX Bar No. 24056392
McElree|Savage|Smith
600 N. Pearl Street, Suite 1600
Plaza of the Americas
Dallas, Texas 75201
Telephone: 214.953.1321
Facsimile: 214.953.0695
(*pending approval of Pro Hac Vice application*)

**ATTORNEYS FOR PLAINTIFF,
JEFFERSON AT YOUNG CIRCLE, L.P.**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFERSON AT YOUNG CIRCLE, L.P., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 07 C 6161 |
| MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., MCZ DEVELOPMENT CORP., AND CENTRUM PROPERTIES, INC., | ) Judge William T. Hart |
| Defendants. | ) |

**SCHEDULE OF EXHIBITS TO PLAINTIFF JEFFERSON AT YOUNG CIRCLE, L.P.'S MOTION FOR PRELIMINARY INJUNCTION**

1. Earnout Agreement

2. Proposed Order on Plaintiff's Motions for Preliminary Injunction and for Expedited Discovery

CHIC_1648393.1

1

# Exhibit A

## EARNOUT AGREEMENT

THIS AGREEMENT (the "Agreement"), dated as of December 9, 2004, is executed by and between JEFFERSON AT YOUNG CIRCLE, L.P., a Delaware limited partnership ("Jefferson") and MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., an Illinois limited liability company ("MCZ").

### RECITALS:

A. As of the date hereof, MCZ has purchased from Jefferson its interest in that certain apartment complex located in the City of Hollywood, Florida currently known as Jefferson at Young Circle (the "Property"), pursuant to an Agreement of Sale and Purchase (the "Contract") dated November 2, 2004, by and between Jefferson, as seller, and MCZ, as purchaser.

B. As of the date hereof, it is the intention of MCZ to convert the Property into condominium units and to sell such units.

C. As part of the consideration for the purchase of the Property, Jefferson will share in the Net Profits (as hereinafter defined) of MCZ derived from the sale of condominium units at the Property or other interests therein.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Recitals</u>. The foregoing recitals are true and correct and are hereby incorporated by reference. Capitalized terms used but not defined in this Agreement shall have their defined meanings in the Contract.

2. <u>Participation</u>. At such time as Net Profits distributed to MCZ's members pursuant to the terms of the MCZ Operating Agreement ("Operating Agreement") equal $5,000,000, then MCZ shall pay to Jefferson from time to time twelve and one-half percent (12.5%) of all Net Profits arising thereafter. Each such payment to Jefferson shall be made in cash concurrently with each distribution to MCZ's members. Jefferson and MCZ acknowledge and agree that (a) the managers of MCZ shall direct all distributions of Net Profits under this Agreement at such time or times as is determined by the managers in their sole and absolute discretion in accordance with the terms of this Agreement and the Operating Agreement, (b) nothing contained in this Agreement shall in any manner be construed to imply that Jefferson has any claim or right whatsoever under this Agreement to require that distributions of Net Profits be made at any particular time or in any particular amount other than as provided in this Agreement, (c) in determining whether to make a distribution or payment of such Net Profits at any time, or in determining the amount of any Net Profits, the managers shall not have any fiduciary, or trustee or other obligation or duty to Jefferson or any its managers, members or Affiliates other than a contractual obligation or duty pursuant to the terms hereof, and (d) MCZ shall have the right to offset against amounts due Jefferson the amount of any monetary losses, for costs and expenses incurred or suffered by MCZ as a consequence of any default with respect to any

surviving obligations of Jefferson under the Contract that continues after written notice and any applicable cure period. Notwithstanding anything herein to the contrary, 12.5% of all Net Profits in excess of $5,000,000 and not previously distributed to Jefferson shall be paid to Jefferson within forty-five (45) days following the closing date of the sale of the last condominium unit or other interest in the Property.

       3. <u>Definition of Net Profits</u>. "Net Profits" shall mean with respect to a particular period, all cash paid to or in possession of the MCZ from any source, including, without limitation, cash from the sale of assets (including condominium units in the Real Property), after deducting therefrom (without duplication) all funds necessary to (i) pay any debt service of outstanding debts, or other costs, expenses and obligations of the MCZ relating to the acquisition, ownership, operation or development of the Property (or that are secured by the Property but not for obligations unrelated to the acquisition, ownership, development or operation of the Property) that are currently due or that are then being refinanced, including then payable fees, costs or expenses and reasonable sales commissions due to a member or Affiliate of MCZ (but excluding all salaries payable to members in the aggregate exceeding $100,000 per year); (ii) establish or add to any reserve in an amount that the managers of MCZ deem reasonably necessary to provide for contingent liabilities or obligations of the MCZ, and maturing obligations, in each case to the extent relating to the ownership, operation or development of the Property which the managers of MCZ determine such reserves to be advisable (but only to the extent such reserves are customary, and in amounts that are customary, for properties of a substantially similar type as the Property); and (iii) return to the members of MCZ an amount equal to their capital invested with MCZ relating to the acquisition, ownership, operation or development of the Property.

       4. <u>Delivery of Statements</u>. MCZ shall provide quarterly sales reports of the condominium units in the Property sold in the form customarily prepared by MCZ for its members or as otherwise reasonably required by Jefferson. Additionally MCZ shall provide financial statements, operating statements, tax returns and any other financial information reasonably requested by Jefferson and relating to the Net Profits to which Jefferson may be entitled and MCZ shall provide same within ten (10) Business Days following Jefferson's request therefor. Jefferson shall have the right to have such reports, records and materials independently audited to determine the Net Profits having arisen at any time. If such audit reveals that Jefferson has not been paid all Net Profits to which it is entitled, then the cost of such audit and related collection and investigation costs shall be paid by MCZ, together with any unpaid Net Profits to which Jefferson is entitled.

       5. <u>Miscellaneous</u>. Jefferson acknowledges and agrees that (a) the right to payment of the Net Profits hereunder does not constitute an ownership interest in all or any portion of the Property or of MCZ, (b) Jefferson shall have no right to participate in the management of the Property, (c) MCZ shall have no fiduciary duty to Jefferson with respect to the operation and/or disposition of the Property, and (d) this Agreement shall not create a partnership or joint venture between Jefferson and MCZ.

       6. <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties hereto with respect to the subject matter of this Agreement and supersedes all prior

EARNOUT AGREEMENT – Page 2
Jefferson at Young Circle

115149_1/(88476/195)

discussions and agreements between the parties with respect thereto. This Agreement shall not be modified or amended except by an instrument in writing signed by all parties hereto.

7. Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS, WITHOUT REFERENCE TO ITS CHOICE OF LAW PRINCIPLES, AND SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE SUCCESSORS INCLUDING WITHOUT LIMITATION ANY LIQUIDATOR, RECEIVER, TRUSTEE, OR DEBTOR-IN-POSSESSION), ASSIGNS AND LEGAL REPRESENTATIONS OF THE PARTIES HERETO. MCZ AND JEFFERSON IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN COOK COUNTY, STATE OF ILLINOIS, OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

8. Severability. In the event one or more of the provisions of this Agreement or any document or agreement delivered or issued with respect to this Agreement shall be deemed to be invalid, illegal or unenforceable in any respect, then the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. All rights and remedies otherwise provided by applicable law. The headings of the various paragraphs hereof are inserted for convenience and reference only and shall not affect the interpretation of this Agreement.

9. Litigation. In the event of any litigation between the parties under this Agreement, the prevailing party shall be entitled to reasonable legal and paraprofessional fees and court costs at all trial and appellate levels.

10. Counterparts. This Agreement may be executed in any number of counterparts and by the separate parties hereto in separate counterparts, each of which when taken together shall be deemed to be one and the same instrument.

11. Waiver of Jury Trial. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF MCZ AND JEFFERSON IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE PROVISIONS OF THIS AGREEMENT.

*[Signatures on following page]*

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

                MCZ/CENTRUM FLORIDA IV OWNER, L.L.C.,
                an Illinois limited liability company

                By: _____
                Name: LAWRENCE ASHKIN
                Title: A MANAGER


                JEFFERSON AT YOUNG CIRCLE, L.P.,
                a Delaware limited partnership

                By:   Apartment Community Realty LLC,
                        a Delaware limited liability company,
                        its general partner


                        By: _____
                        Name: _____
                        Title: _____

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

        MCZ/CENTRUM FLORIDA IV OWNER, L.L.C.,
        an Illinois limited liability company

        By: _____
        Name: _____
        Title: _____


        JEFFERSON AT YOUNG CIRCLE, L.P.,
        a Delaware limited partnership

    By:   Apartment Community Realty LLC,
        a Delaware limited liability company,
        its general partner

        By: _/s/ James W. Morgan, Jr._____
        Name: James W. Morgan, Jr.
        Title: Assistant Vice President

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFERSON AT YOUNG CIRCLE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., MCZ DEVELOPMENT CORP., AND CENTRUM PROPERTIES, INC., <br><br> Defendants. | CIVIL ACTION NO. 07 C 6161 <br><br> Judge William T. Hart |

### ORDER ON PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY

On this day, the Court considered Plaintiff's Motion for Preliminary Injunction and Motion for Expedited Discovery. After considering the Motions and the arguments of counsel, the Court is of the opinion that the Motions are well-taken and should be granted.

**IT IS THEREFORE ORDERED** that Plaintiff shall immediately serve Defendants with the discovery set forth in **Exhibit A** and Defendants shall respond to those discovery requests within 10 business days after receipt of the requests.

**IT IS FURTHER ORDERED** that an evidentiary hearing is scheduled for _____, _____, ___ 2007 at _____ _.m on Plaintiff's Motion for Preliminary Injunction.

**IT IS FURTHER ORDERED** that the parties shall adhere to the following briefing schedule in preparation for the hearing:

　　　　_____, ___ 2007 — Plaintiff's Brief in Support of Its Request for Preliminary Injunction

1

150178_1/(88476/195)

_____, \_\_\_ 2007 — Defendants' Response to Plaintiff's Request for Preliminary Injunction

SO ORDERED.

November \_\_\_, 2007.

JUDGE WILLIAM T. HART

Order prepared by:
Martin J. Bishop, IL Bar No. 6269425
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
Telephone: 312.832.4500
Facsimile: 312.832.4700

Craig A. Albert, TX Bar No. 00790076
Sarah J. Shadonix, TX Bar No. 24056392
McElree|Savage|Smith
600 N. Pearl Street, Suite 1600
Plaza of the Americas
Dallas, Texas 75201
Telephone: 214.953.1321
Facsimile: 214.953.0695
(pending approval of Pro Hac Vice application)

**ATTORNEYS FOR PLAINTIFF,
JEFFERSON AT YOUNG CIRCLE, L.P.**