# EARNOUT AGREEMENT

THIS AGREEMENT (the "Agreement"), dated as of December 9, 2004, is executed by and between JEFFERSON AT YOUNG CIRCLE, L.P., a Delaware limited partnership ("Jefferson") and MCZ/CENTRUM FLORIDA IV OWNER, L.L.C., an Illinois limited liability company ("MCZ").

<u>R E C I T A L S</u>:

A.   As of the date hereof, MCZ has purchased from Jefferson its interest in that certain apartment complex located in the City of Hollywood, Florida currently known as Jefferson at Young Circle (the "Property"), pursuant to an Agreement of Sale and Purchase (the "Contract") dated November 2, 2004, by and between Jefferson, as seller, and MCZ, as purchaser.

B.   As of the date hereof, it is the intention of MCZ to convert the Property into condominium units and to sell such units.

C.   As part of the consideration for the purchase of the Property, Jefferson will share in the Net Profits (as hereinafter defined) of MCZ derived from the sale of condominium units at the Property or other interests therein.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.   <u>Recitals</u>.  The foregoing recitals are true and correct and are hereby incorporated by reference.  Capitalized terms used but not defined in this Agreement shall have their defined meanings in the Contract.

2.   <u>Participation</u>.  At such time as Net Profits distributed to MCZ's members pursuant to the terms of the MCZ Operating Agreement ("Operating Agreement") equal $5,000,000, then MCZ shall pay to Jefferson from time to time twelve and one-half percent (12.5%) of all Net Profits arising thereafter.  Each such payment to Jefferson shall be made in cash concurrently with each distribution to MCZ's members.  Jefferson and MCZ acknowledge and agree that (a) the managers of MCZ shall direct all distributions of Net Profits under this Agreement at such time or times as is determined by the managers in their sole and absolute discretion in accordance with the terms of this Agreement and the Operating Agreement, (b) nothing contained in this Agreement shall in any manner be construed to imply that Jefferson has any claim or right whatsoever under this Agreement to require that distributions of Net Profits be made at any particular time or in any particular amount other than as provided in this Agreement, (c) in determining whether to make a distribution or payment of such Net Profits at any time, or in determining the amount of any Net Profits, the managers shall not have any fiduciary, or trustee or other obligation or duty to Jefferson or any its managers, members or Affiliates other than a contractual obligation or duty pursuant to the terms hereof, and (d) MCZ shall have the right to offset against amounts due Jefferson the amount of any monetary losses, for costs and expenses incurred or suffered by MCZ as a consequence of any default with respect to any

surviving obligations of Jefferson under the Contract that continues after written notice and any applicable cure period. Notwithstanding anything herein to the contrary, 12.5% of all Net Profits in excess of $5,000,000 and not previously distributed to Jefferson shall be paid to Jefferson within forty-five (45) days following the closing date of the sale of the last condominium unit or other interest in the Property.

3.  **Definition of Net Profits.** "Net Profits" shall mean with respect to a particular period, all cash paid to or in possession of the MCZ from any source, including, without limitation, cash from the sale of assets (including condominium units in the Real Property), after deducting therefrom (without duplication) all funds necessary to (i) pay any debt service of outstanding debts, or other costs, expenses and obligations of the MCZ relating to the acquisition, ownership, operation or development of the Property (or that are secured by the Property but not for obligations unrelated to the acquisition, ownership, development or operation of the Property) that are currently due or that are then being refinanced, including then payable fees, costs or expenses and reasonable sales commissions due to a member or Affiliate of MCZ (but excluding all salaries payable to members in the aggregate exceeding $100,000 per year); (ii) establish or add to any reserve in an amount that the managers of MCZ deem reasonably necessary to provide for contingent liabilities or obligations of the MCZ, and maturing obligations, in each case to the extent relating to the ownership, operation or development of the Property which the managers of MCZ determine such reserves to be advisable (but only to the extent such reserves are customary, and in amounts that are customary, for properties of a substantially similar type as the Property); and (iii) return to the members of MCZ an amount equal to their capital invested with MCZ relating to the acquisition, ownership, operation or development of the Property.

4.  **Delivery of Statements.** MCZ shall provide quarterly sales reports of the condominium units in the Property sold in the form customarily prepared by MCZ for its members or as otherwise reasonably required by Jefferson. Additionally MCZ shall provide financial statements, operating statements, tax returns and any other financial information reasonably requested by Jefferson and relating to the Net Profits to which Jefferson may be entitled and MCZ shall provide same within ten (10) Business Days following Jefferson's request therefor. Jefferson shall have the right to have such reports, records and materials independently audited to determine the Net Profits having arisen at any time. If such audit reveals that Jefferson has not been paid all Net Profits to which it is entitled, then the cost of such audit and related collection and investigation costs shall be paid by MCZ, together with any unpaid Net Profits to which Jefferson is entitled.

5.  **Miscellaneous.** Jefferson acknowledges and agrees that (a) the right to payment of the Net Profits hereunder does not constitute an ownership interest in all or any portion of the Property or of MCZ, (b) Jefferson shall have no right to participate in the management of the Property, (c) MCZ shall have no fiduciary duty to Jefferson with respect to the operation and/or disposition of the Property, and (d) this Agreement shall not create a partnership or joint venture between Jefferson and MCZ.

6.  **Entire Agreement.** This Agreement contains the entire agreement between the parties hereto with respect to the subject matter of this Agreement and supersedes all prior

discussions and agreements between the parties with respect thereto. This Agreement shall not be modified or amended except by an instrument in writing signed by all parties hereto.

7. <u>Governing Law</u>. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS, WITHOUT REFERENCE TO ITS CHOICE OF LAW PRINCIPLES, AND SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE SUCCESSORS INCLUDING WITHOUT LIMITATION ANY LIQUIDATOR, RECEIVER, TRUSTEE, OR DEBTOR-IN-POSSESSION), ASSIGNS AND LEGAL REPRESENTATIONS OF THE PARTIES HERETO. MCZ AND JEFFERSON IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN COOK COUNTY, STATE OF ILLINOIS, OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

8. <u>Severability</u>. In the event one or more of the provisions of this Agreement or any document or agreement delivered or issued with respect to this Agreement shall be deemed to be invalid, illegal or unenforceable in any respect, then the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. All rights and remedies otherwise provided by applicable law. The headings of the various paragraphs hereof are inserted for convenience and reference only and shall not affect the interpretation of this Agreement.

9. <u>Litigation</u>. In the event of any litigation between the parties under this Agreement, the prevailing party shall be entitled to reasonable legal and paraprofessional fees and court costs at all trial and appellate levels.

10. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and by the separate parties hereto in separate counterparts, each of which when taken together shall be deemed to be one and the same instrument.

11. <u>Waiver of Jury Trial.</u> TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF MCZ AND JEFFERSON IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE PROVISIONS OF THIS AGREEMENT.

*[Signatures on following page]*

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

    MCZ/CENTRUM FLORIDA IV OWNER, L.L.C.,
    an Illinois limited liability company

By: _____
Name: _LAURENCE ASHKIN_____
Title: _A MANAGER_____


    JEFFERSON AT YOUNG CIRCLE, L.P.,
    a Delaware limited partnership

By:    Apartment Community Realty LLC,
       a Delaware limited liability company,
       its general partner


       By: _____
       Name: _____
       Title: _____

IN WITNESS WHEREOF, this Agreement is executed as of the date first above written.

        MCZ/CENTRUM FLORIDA IV OWNER, L.L.C.,
        an Illinois limited liability company

        By: _____
        Name: _____
        Title: _____


        JEFFERSON AT YOUNG CIRCLE, L.P.,
        a Delaware limited partnership

        By:   Apartment Community Realty LLC,
               a Delaware limited liability company,
               its general partner

        By: *[signature]*
        Name: James W. Morgan, Jr.
        Title: Assistant Vice President